IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARDINE WILLIAMS, ) | |
| ) | |
| Claimant, ) | |
| ) | No. 16-cv-1958 |
| v. ) | |
| ) | Magistrate Judge Jeffrey T. Gilbert |
| NANCY A. BERRYHILL,[1] Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Mardine Williams ("Claimant") seeks review of the final decision of Respondent Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of the United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8.] The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. [ECF Nos. 10, 17.] For the following reasons, Claimant's motion is granted and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25, Berryhill is automatically substituted as the Defendant in this case. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

On March 8, 2012, Claimant filed applications for DIB and SSI, alleging a disability onset date of July 2, 2010, due to diabetes and partial blindness in her left eye. (R. 108, 113, 178-90.) The claims were denied initially on June 22, 2012, and upon reconsideration on September 20, 2012. (R. 104-13, 116-23.) On October 11, 2012, Claimant requested a hearing before an Administrative Law Judge ("the ALJ"). (R. 108.) Claimant appeared unrepresented at a brief hearing on May 1, 2013. (R. 21-25.) The ALJ informed Claimant of her right to counsel and adjourned the hearing in order to allow Claimant time to obtain counsel. *Id*. A second hearing was then held on July 15, 2013. (R. 26-55.) At that hearing, Claimant, who was unrepresented by counsel, appeared and testified. (R. 28-44, 46-48, 51-55.) A vocational expert ("the VE") also appeared and testified. (R. 45, 48-51.)

On September 22, 2014, the ALJ issued a written decision denying Claimant's applications for DIB and SSI and finding she was not disabled under the Act. (R. 9-15.) The opinion followed the required five-step sequential evaluation process required by the Social Security Regulations. 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found Claimant engaged in substantial gainful activity throughout 2012. (R. 11.) The ALJ further found Claimant did not engage in substantial gainful activity in 2011, 2013, and 2014. (*Id*.) At step two, the ALJ found Claimant had the severe impairments of diabetes, arthritis, and obesity. (R. 12.) At step three, the ALJ found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (*Id*.)

Before step four, the ALJ found Claimant had the residual functional capacity ("RFC") to perform medium work with frequent balancing, stooping, kneeling, crouching, crawling and climbing ramps and stairs. (R. 12.) He also found Claimant must never climb ladders, ropes, or scaffolds and should avoid concentrated exposure to hazards and on-the-job driving. (*Id.*) Based on this RFC, the ALJ determined at step four that Claimant could perform her past relevant work as a residential aide and an accountant. (R. 14.) The ALJ did not proceed to step five and found Claimant was not disabled under the Act. (R. 14-15.) The Social Security Appeals Council denied Claimant's request for review, and the ALJ's decision became the final decision of the Commissioner. (R. 1-3.) *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-107 (2000). Under such circumstances, the district court reviews the decision of the ALJ. *Id.* Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms*, 553 F.3d at 1097.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the

conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms*, 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. ANALYSIS

Claimant asserts the ALJ made five errors. First, Claimant argues the ALJ failed to properly weigh and evaluate the opinion of her treating physician. Second, she contends the ALJ's credibility determination is flawed. Third, Claimant claims the ALJ erred by failing to consider limitations caused by her neuropathy and left upper extremity impairment when determining her RFC. Fourth, she argues the ALJ failed to develop the record by failing to recontact her treating physician. Fifth, Claimant maintains the ALJ violated the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") 1-2-7-30 and 1-2-7-1 when he relied on medical evidence obtained post-hearing that was not proffered to Claimant. For the reasons discussed below, the Court agrees the ALJ erred in evaluating the

treating physician's opinion, in determining the Claimant's RFC, and in failing to adequately develop the record. Because these conclusions require remand, the Court need not address whether the ALJ also erred in his credibility determination and in failing to proffer post-hearing medical evidence to Claimant.

A.   **The ALJ Did Not Properly Weigh And Evaluate The Treating Physician's Opinion**

Claimant argues the ALJ erred in giving "little weight" to the opinion of Claimant's treating physician Dr. Rebecca Eary and "significant weight" to the opinions of two non-examining state agency physicians, Dr. Bharati Jhaveri and Dr. Vidya Madala. In August 2010, Dr. Eary filled out a form titled "Medical Evaluation—Physician's Report" at the request of the Illinois Department of Human Services. (R. 443-48.) In the form, Dr. Eary stated that Claimant suffers from insulin dependent diabetes, hypertension, hyperlipidemia, and peptic ulcer disease. (R. 443.) She also indicated Claimant has uncontrolled diabetes and neuropathy with contractures of her hands. (R. 446.) Dr. Eary rated Claimant as having full capacity during an eight-hour workday in walking, bending, standing, stooping, sitting, turning, pushing, pulling, speaking, traveling, fine and gross manipulation, finger dexterity, and ability to perform activities of daily living. (R. 448.) Dr. Eary had insufficient information to determine Claimant's capacity for climbing. (*Id.*). Dr. Eary stated that Claimant could lift no more than 10 pounds at a time during a workday. (*Id.*) Finally, she indicated Claimant had mild limitations in her ability to perform activities of daily living and no limitation in social functioning and concentration, persistence, and pace. (*Id.*)

The ALJ gave Dr. Eary's opinion "little weight" because it was "somewhat outdated" and "not entirely consistent with the evidence of record as a whole, including the items described above." (R. 14.) The ALJ relied on the opinions of the non-examining state agency medical

5

consultants, who opined that Claimant retained the ability to perform medium work with certain postural and environmental limitations. (R. 76-78, 88-89.) The ALJ said he gave the state agency medical consultants' opinions "significant weight" because their "assessments are generally consistent with the evidence of the record as a whole." (R. 14.)

Although Claimant argues the ALJ failed to adequately evaluate Dr. Eary's opinion, the main problem with the ALJ's analysis is that the state agency physicians relied upon by the ALJ did not review the complete medical record in reaching their conclusions. With respect to medical opinion evidence, the state agency physicians relied only on the opinion of consultative examiner Dr. Charles Carlton in assessing Claimant's RFC. (R. 76, 78, 87, 90.) However, after the hearing and after the state agency physicians' assessments, more than 100 pages of additional medical records were added to the record, including, but not limited to: (a) evidence of dislocation of Claimant's left shoulder in September 2007; (b) a January 8, 2008 MRI of her left shoulder showing partial-thickness supraspinatus tearing and acromioclavicular joint arthritis; (c) a January 15, 2008 progress note from Dr. Douglas Evans, an orthopedic surgeon, indicating significant left shoulder stiffness, passive forward flex and abduct approximately 90-100 degrees, forward flex approximately 60 degrees actively and abduct only approximately 30 degrees, recommending continued physical therapy, and prescribing a subacromial injection; (d) a February 19, 2008 progress note from Dr. Evans stating Claimant continued to be very stiff, was able to forward flex to approximately 110 degrees, passively abduct to approximately 80 degrees but had a solid block at this range, only able to abduct to approximately 60 degrees and approximately 80 to 90 degrees of forward flexion, recommending continued physical therapy, and prescribing Voltaren (nonsteroidal anti-inflammatory) for pain; (e) an April 9, 2008 progress note from Dr. Milton Legrand, an internal medicine physician, indicating that Claimant had

injections with minimal relief and tried physical therapy with only minimal improvement for her left shoulder rotator cuff tear and finding decreased range of motion of the left shoulder with only 30 degrees of abduction and positive empty can sign[2]; (f) a June 24, 2008 progress note from Dr. Evans indicating that Claimant had not made significant progress with physical therapy and still had significant stiffness and pain, finding her exam essentially unchanged from her last visit with some decreased rotation at her side compared to her last visit, stiffness in external rotation to approximately neutral and internal rotation only to her belly with scapular strain, and continued solid end point in abduction and forward flexion with motion as well, and recommending arthroscopic evaluation and lysis of adhesions with possible rotator cuff repair with acromial decompression; (g) a July 30, 2008 progress note from Dr. Legrand finding Claimant tender to palpation over upper back muscles and limited range of motion of her left shoulder, and (h) an August 23, 2010 opinion from Dr. Eary, a family practice physician and Plaintiff's treating physician since December 18, 2008, indicating that Claimant can lift no more than 10 pounds at a time during an eight-hour workday. (R. 30, 300, 346-454, 396, 403-405, 412, 414, 422, 445, 448.)[3] At the hearing on July 15, 2013, Claimant testified that she did not have surgery to repair her left shoulder rotator cuff tear, despite Dr. Evans' recommendation, because she did not have medical insurance. (R. 41, 300.)

The state agency physicians did not consider any of the evidence of Claimant's unrepaired left shoulder rotator cuff tear or Dr. Eary's opinion on Claimant's lifting limitation. The Court recognizes Claimant's left shoulder rotator cuff tear occurred before she alleged

---

[2] "The empty can test is used to determine whether a patient has suffered a shoulder injury. . . . Pain or weakness is a positive test." *Armstrong v. Covlin*, 2014 WL 5442745, at *7 n.27 (M.D. Pa. Oct. 24, 2014).

[3] At the hearing, the ALJ admitted Exhibits B1A through B5F into the record. (R. 30.) After the conclusion of Claimant's hearing, the ALJ obtained additional medical records contained in Exhibits B6F through B11F. (R. 20, 346-454.)

7

disability, but that does not rule out the existence of functional limitations stemming from the unrepaired condition that continued to cause pain during the relevant period. Claimant testified that she experiences ongoing pain in her left shoulder, which makes it hard for her to wash and take care of her hair, take baths, and put on socks. (R. 42.) Claimant rated her left shoulder pain as an eight out of ten without ibuprofen and a five out of ten with ibuprofen. (R. 41-42). The state agency physicians' assessments were based on an incomplete picture of Claimant's condition because they did not have the benefit of reviewing Claimant's left shoulder MRI, examination and treatment records for her left shoulder rotator cuff tear which ultimately needed surgery, and Dr. Eary's lifting limitation opinion. (R. 396, 403-05, 412, 414, 422, 448.) It is reasonable to assume that an unrepaired torn left rotator cuff that improved little with physical therapy and injections, warranted surgical intervention, and continues to cause pain might affect the state agency physicians' opinions of Claimant's physical functional capacity, including her ability to lift, carry, and reach.

An ALJ has a duty to adequately explain a decision to give greater weight to the opinions of state agency reviewers than to the opinion of a treating physician.. *Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010). This rule is no different when the state agency reviewers did not review all material portions of the record. *See Pennington v. Colvin*, 2015 WL 4093345, at *5 (N.D. Ind. July 7, 2015) ("Therefore, this Court expects a sound explanation for the weight assigned to the medical opinions in a case such as this, in which Pennington's treating physician's opinion was given only some weight while the opinion of a non-examining State agency physician, who did not review the entire record, was given great weight."); *Buechele v. Colvin*, 2013 WL 1200611, at *12 (N.D. Ill. Mar. 25, 2013) (collecting cases). In this case, the record contains no expert medical opinion based on a review of the complete medical record

which supports the ALJ's conclusion that Claimant can perform medium exertional work. Although the ALJ relied on the state agency physicians' medical opinions to discount Dr. Eary's opinion, the ALJ did not address their limited review of the record and explain what impact that did or did not have on how much weight each opinion received. This was an error. *See Bellinghiere v. Astrue*, 2011 WL 4431023, at *8 (N.D. Ill. Sept. 22, 2011) (remand appropriate where state agency physicians' "opinions relied upon by the ALJ to contradict the opinion of Claimant's treating physicians were not based on a complete review or an accurate summary of all the relevant medical evidence.").

Claimant next argues the ALJ erred by failing to give good reasons for rejecting her treating physician's opinion that she could lift no more than 10 pounds at a time. "A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). "More weight is given to the opinion of treating physicians because of their greater familiarity with the claimant's conditions and circumstances." *Id*. An ALJ must provide "good reasons" for not giving controlling weight to a treating physician's opinion. *Campbell*, 627 F.3d at 306; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our . . . decision for the weight we give your treating source's opinion.").

In determining Claimant's RFC in this case, the ALJ rejected the less than 10 pound lifting limitation offered by Dr. Eary, Claimant's treating physician. The ALJ gave two reasons for not giving controlling weight to Dr. Eary's assessment that Claimant can lift no more than 10 pounds at a time. (R. 14). First, the ALJ found that Dr. Eary's assessment was "somewhat outdated." This undeveloped assertion leaves much to be desired. Dr. Eary issued her opinion

9

on August 23, 2010, which is in the relevant time period after the alleged onset date of July 2, 2010. Because the opinion of Dr. Eary is probative of Claimant's impairments after her alleged onset date of July 2, 2010, her opinion would seem to remain relevant. Moreover, the timing of Dr. Eary's opinion just after the alleged onset date does not necessarily render it stale, especially given evidence that Claimant experienced little improvement upon treatment for her left rotator cuff tear, never had surgery to repair the tear, and has ongoing shoulder pain. The ALJ does not cite to any improvement of Claimant's left shoulder symptoms or other circumstances that would render Dr. Eary's opinion unreliable. Given Claimant's lack of surgery to repair her rotator cuff tear and her continued left shoulder pain, it is not clear that Dr. Eary's opinion was no longer significant or probative. Therefore, the ALJ failed to appropriately explain why Dr. Eary's opinion should be rejected because of when it was rendered.

Second, the ALJ made a conclusory statement that Dr. Eary's lifting opinion "is not entirely consistent with the evidence of record as a whole, including the items described above." (R. 14.) The Court is concerned about how the ALJ address two of the "items described above." The first is what the ALJ said was Claimant's normal grip strength and normal range of motion as noted in Dr. Eary's treatment records from September 20, 2012 and July 24, 2013. (R. 13.)[4] The Court has reviewed the progress notes from Dr. Eary dated September 20, 2012 and July 24, 2013 and cannot locate evidence indicating that Dr. Eary found "normal grip strength." (R. 348-

---

[4] The Commissioner argues that the ALJ appropriately declined to assign controlling weight to Dr. Eary's August 23, 2010 statements that Claimant has uncontrolled diabetes with neuropathy contracture of hands and that she can lift no more than 10 pounds because her statements were contradicted by September 4, 2010 and May 23, 2012 consultative examination results. (Doc. 18 at 4-5). The Commissioner's argument is an impermissible post-hoc rationalization because the ALJ did not justify his decision to decline to give Dr. Eary's opinion controlling weight by pointing to the September 4, 2010 and May 23, 2012 consultative physician examinations. (R. 14.); *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016) ("[T]he ALJ did not rely on this rationale in his opinion, so the Commissioner cannot now rely on it."). The ALJ does not mention the September 4, 2010 consultative examination at all in his decision and he gave the May 23, 2012 consultative examination results "little weight." (R. 13.). Thus, the Court may not consider the September 4, 2010 and May 23, 2012 consultative examination results as substantial evidence supporting the ALJ's rejection of Dr. Eary's lifting limitation.

54.) Even accepting the ALJ's characterization of the record in this regard, it is not clear to the Court that having normal grip strength is necessarily inconsistent with Dr. Eary's limitation of lifting no more than 10 pounds. The ALJ did not cite any medical evidence in the record supporting the inference that having normal grip strength translates to no difficultly lifting. If the ALJ suspected that a finding of normal grip strength pointed toward a greater functional lifting capacity than Dr. Eary found to exist, he should have better explained the reasoning and evidence that supported that conclusion and, if necessary, sought clarification from Dr. Eary or a medical expert. *See Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) (recognizing that "an ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so.").

The ALJ similarly discussed Claimant's normal range of motion of the shoulder. But the fact that Claimant had "normal movement of all extremities" at one appointment is not necessarily inconsistent with a limitation to lifting no more than 10 pounds at a time due to shoulder pain. (R. 350); s*ee Hughes v. Astrue*, 705 F.3d 276, 278 (7th Cir. 2013) (noting the ALJ "confused the range of motion in her shoulders with the strength of her arms."); *Holmes v. Colvin*, 2016 WL 6943775, at *4 (W.D. Wash. Nov. 28, 2016) (holding that the "ALJ's finding that plaintiff demonstrated normal muscle strength and range of motion does not necessarily demonstrate any inconsistency with the opinion from a treating physician that plaintiff had lifting limitations"); *Podewell v. Astrue*, 2011 WL 3359979, at *8 (N.D. Ill. Aug. 3, 2011) (stating the ALJ noted that Claimant had normal range of motion of the shoulders "but whether he could move his shoulders is a separate inquiry from whether his shoulder injury causes lifting restrictions."). Again, to the extent the ALJ believed Dr. Eary's opinion on lifting to be inconsistent with her recorded normal movement of all extremities at one appointment, the ALJ

11

failed to build a logic bridge supporting this conclusion. Accordingly, the ALJ erred in discounting Dr. Eary's lifting opinion on the basis that it was not entirely consistent with normal grip strength and normal range of motion.

Claimant further argues the ALJ failed to consider the relevant regulatory factors in determining the weight to be given to Dr. Eary's opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996) (". . . a finding that a treating source medical opinion is not well-supported . . . or is inconsistent with the other substantial evidence . . . means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927."). In this case, it is not clear to the Court that the ALJ adequately considered some of these factors.

The ALJ's analysis provides no indication that he considered the length, nature and extent of Claimant's treatment relationship with Dr. Eary or the frequency of examinations. (*Id*.) Dr. Eary was Claimant's most recent treating primary care physician from December 2008 until July 2013. Dr. Eary had been treating Claimant for about 20 months and had seen Claimant on at least five occasions prior to when she rendered her August 23, 2010 opinion. (R. 374-78, 445.) Additionally, the ALJ did not acknowledge the consistency Dr. Eary's lifting opinion with certain objective medical evidence including Claimant's left shoulder rotator cuff tear confirmed

12

by MRI (R. 422), examination and treatment notes regarding her rotator cuff tear (R. 300, 303, 309, 396, 403-05, 412, 414), and diabetic neuropathy affecting her hands (R. 309, 348, 446.). On remand, the ALJ should consider the required regulatory factors and his discussion of Dr. Eary's opinion should be sufficient to permit meaningful review of the ALJ's weighing of Dr. Eary's opinion.

**B.     The ALJ's RFC Determination Is Not Supported By Substantial Evidence**

Claimant contends the ALJ erred by failing to include limitations caused by her unrepaired left shoulder rotator cuff tear and neuropathy in his assessment of her RFC. "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, 'even [limitations] that are not severe, and may not dismiss a line of evidence contrary to the ruling.'" *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (*quoting Villano*, 556 F.3d at 563). "While the ALJ is not required to address every piece of evidence," he "must build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 1995). The ALJ is required to "sufficiently articulate his assessment of the evidence to assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

The ALJ found Claimant had the RFC to perform medium work, meaning Claimant could lift up to 50 pounds with frequent lifting or carrying of objects weighing up to 25 pounds. (R. 12.) The ALJ's RFC for medium work appears to be based on an assumption of improvement in Claimant's left shoulder condition. This is problematic because the ALJ did not cite any medical opinion in the record that showed such improvement in fact occurred.[5]  In making the RFC

---

[5] Thee ALJ noted that Claimant testified ibuprofen did not eliminate her shoulder pain but that she has not received any further treatment for her shoulder condition beyond ibuprofen since in 2008. (R. 14, 41-42.)

13

determination, the ALJ also failed to assess the medical evidence relating to Claimant's unrepaired left shoulder rotator cuff tear and neuropathy in her upper extremities. There is medical evidence supporting Claimant's claim of left shoulder pain, which the ALJ should have considered. The objective medical evidence relevant to Claimant's left shoulder impairment showed a partial thickness tear of her rotator cuff and acromioclavicular joint arthritis. (R. 405.) Without explanation, the ALJ did not mention the MRI confirming Claimant's left shoulder rotator cuff tear and acromioclavicular joint arthritis. The ALJ also failed to note that physical therapy and injections yielded little improvement of Claimant's significant left shoulder stiffness and pain and that surgery was recommended but was never completed. Claimant's left rotator cuff tear was not repaired and Claimant testified that she has ongoing left shoulder pain which she rated at a five out of ten even with medication. (R. 42.) The record simply does not indicate that Claimant's shoulder condition improved after 2008 to the degree that she became able to lift up to 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. §§ 404.1567(c), 416.967(c).

The record in this case also indicates Claimant has been diagnosed with neuropathy and takes medication for that condition. (R. 309, 353, 400, 402, 446-47.) The medical evidence shows Claimant has numbness and tingling in her hands, numbness in her left wrist, difficulty grasping, and contractures of her hands. (R. 306, 348, 398, 446.). Claimant testified that she has "real bad cramps" in her hands and difficulty holding and carrying things. (R. 35.) The ALJ failed to mention Claimant's neuropathy in her upper extremities when determining Claimant's RFC.

The unaddressed medical evidence of Claimant's unrepaired left shoulder condition and neuropathy of the upper extremities could affect Claimant's RFC, including her ability to lift,

14

carry, reach, and grip, grasp or hold objects. The ALJ's failure to minimally discuss the medical evidence concerning Claimant's shoulder injury and neuropathy of the upper extremities does not meet the level of articulation required. *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994) (holding the "ALJ was not free to dismiss Herron's hand impairment without explaining why he reached that conclusion 'in a manner sufficient to permit an informed review.'") (citations omitted). Accordingly, the Court cannot conclude that substantial evidence supports the ALJ's failure to include any limitations related to Claimant's shoulder impairment and neuropathy of her upper extremities in her RFC. *Id*. ("Because of the ALJ's failure to consider the evidence relating to [the claimant's] hand impairment, we are unable to evaluate and determine whether substantial evidence existed to support the ALJ's finding."). On remand, the ALJ is directed to fully consider the medical evidence of Claimant's left shoulder rotator cuff tear, acromioclavicular joint arthritis, and neuropathy of her upper extremities. [6]

## C.    The ALJ Failed To Fully And Fairly Develop The Record

Claimant asserts the ALJ should have recontacted Dr. Eary to obtain an up-to-date medical opinion concerning Claimant's shoulder condition and her lifting limitations. The Commissioner did not respond to this argument, arguing instead that the ALJ fully developed the record by allowing Claimant time to secure representation and by obtaining Dr. Eary's records after the hearing. The Court agrees the ALJ did not fully and fairly develop the record.

---

[6] Claimant also appears to argue that the ALJ erred by failing to include any limitations in the RFC related to Claimant's neuropathy in her lower extremities. (R. 336, 338, 348, 418). The ALJ's decision to exclude lower extremity limitations from the RFC is supported by substantial evidence. Claimant does not identify any purported functional limitations arising from the neuropathy of her lower extremities that the ALJ allegedly failed to include in the RFC. Claimant also fails to cite to any medical or opinion evidence indicating that Claimant's neuropathy of her lower extremities resulted in any functional limitations greater than those included in the ALJ's RFC determination. In fact, Dr. Eary, Claimant's treating physician, opined that Claimant has no standing or walking limitations despite her lower extremity neuropathy. (R. 448.) Based on this record, the ALJ did not err in failing to incorporate lower extremity limitations into the RFC.

"[T]he ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms*, 553 F.3d at 1098. "This duty is enhanced when a claimant appears without counsel; then the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* (internal quotations omitted); *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994) ("[T]he ALJ has a heightened duty to make sure that the record is developed when a claimant is unrepresented."). Thus, "the ALJ is required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional record and information." *Nelms*, 553 F.3d at 1098. The Social Security regulations provide that an ALJ may recontact a medical source if he is unable to render a decision because the evidence is insufficient or inconsistent. 20 C.F.R. §§ 404.1520b(2)(i), 416.920b(2)(i).

Courts generally defer to the ALJ's judgment on how much evidence to gather, even when the claimant lacks representation, unless there has been a "significant omission." *Nelms*, 553 F.3d at 1098. A significant omission is one that is prejudicial to the claimant. *Id.* To demonstrate prejudice, a claimant must "set forth specific, relevant facts—such a medical evidence—that the ALJ did not consider." *Id.* "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Id.* (internal quotations omitted).

Because Claimant was unrepresented, the ALJ had a heightened duty to develop a full and fair record. Here, the ALJ found Dr. Eary's opinion was "somewhat outdated" and discounted it in part on that ground even though Dr. Eary's opinion is within the relevant time period. Nevertheless, if the ALJ was unclear about the relevance of Dr. Eary's opinion because he believed it was outdated, it was the ALJ's duty to contact Dr. Eary for clarification. That is

particularly true in a case in which the claimant is not represented by counsel and in which the ALJ uses what he considers a stale opinion against the claimant. The ALJ did not attempt to obtain an updated opinion from Dr. Eary, despite the fact that the ALJ requested and received medical records from Dr. Eary after the hearing. Dr. Eary saw Claimant on at least seven occasions after August 23, 2010 and could have supplemented her opinion based on those additional examinations had the ALJ asked. (R. 348, 366, 367-68, 370-73).

Claimant has established that she was prejudiced by the ALJ's failure to develop the record. Claimant's current ability to lift was a critical component of the ALJ's RFC determination. An updated medical opinion would have revealed the current state of Claimant's shoulder condition and her lifting ability. As discussed earlier, the ALJ's reliance on the state agency physicians' evaluations does not provide substantial support for the ALJ's RFC because those physicians based their opinions on an incomplete medical record which did not reflect Claimant's left shoulder condition and Dr. Eary's lifting limitation. Therefore, with regard to Claimant's shoulder impairment, the record was insufficient to make a determination regarding whether Claimant is disabled. On remand, the ALJ should recontact Dr. Eary to request an updated opinion of the Claimant's lifting ability and the basis for the medical opinion. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (failure of an ALJ to fulfill his obligation to develop a full and fair record is good cause to remand for gathering of additional evidence).

## IV. CONCLUSION

For the reasons stated above, Claimant's motion for summary judgment [ECF. No. 10] is granted, and the Commissioner's motion for summary judgment [ECF No. 17] is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: August 1, 2017